RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0247p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

                         No. 12-2258

LEONEL MILLER HINOJOSA, JR.,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:12-cr-00047-1—Janet T. Neff, District Judge.

Decided and Filed: August 23, 2013

Before: ROGERS and COOK, Circuit Judges; VAN TATENHOVE, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Craig A. Frederick, Grand Rapids, Michigan, for Appellant. Heath M. Lynch, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

ROGERS, Circuit Judge. Leonel Hinojosa, Jr. pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), but he reserved his right to appeal the district court's denial of his motion to suppress the pistol that formed the basis of the charge. He does so now, arguing that an unconstitutional search and seizure led to the discovery of the gun. The district court found that the questioning leading up

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

to Hinojosa's arrest and search occurred during a consensual encounter. A reasonable person would have felt that he was free to terminate the encounter, and therefore Hinojosa was not seized. The encounter did not violate the Fourth Amendment.

On the afternoon of January 18, 2012, Officers Justin Wonders and Eric Shaffer of the Kalamazoo Police Department were on their patrol in a high-crime, high-drug area of the city. They observed a vehicle, occupied by Hinojosa, parked at a house next door to a house that had been the site of past drug activity and neighborhood complaints. The officers watched Hinojosa back the car up out of the driveway, then pull back in, park, exit the vehicle, walk up the driveway toward some garbage cans, walk back toward the car, then again walk toward the garbage cans and back. Finally, Hinojosa walked into the house through the front door. He remained in the house for under one minute, and then he got into the car and drove away. The officers followed Hinojosa for several blocks until he turned into the driveway of a subdivided house, where he parked his car. Officer Wonders knew that there had been reports of drug manufacturing in one of the several apartments in the building.

Officer Wonders exited the unmarked police car and approached Hinojosa's vehicle. Meanwhile, Officer Shaffer parked the police car in such a manner that it would not have blocked Hinojosa's car if it had attempted to back out of the driveway. As Officer Wonders approached Hinojosa, who was still sitting in his car, he held up his hand in a signal that he wanted to talk, and he approached the car with his hand on his service weapon.

Allowing Officer Wonders to question Hinojosa, Officer Shaffer approached another man standing in the parking lot of the building. He briefly questioned the man and then told him to go inside his apartment.

When Officer Wonders reached Hinojosa's car, he knocked on the driver's side window and asked "Hey, can I talk to you real quick?" Hinojosa, still with his window rolled up, asked the officer why he wanted to talk, and the officer responded that he just wanted to talk about "nothing major" "real quick." When Hinojosa asked what was going on, Officer Wonders told him that they were responding to tips regarding

suspicious activity and that the officers "were just trying to confirm or deny [their] suspicions" about his odd behavior in the other driveway. The officer then asked Hinojosa whether he had any identification on his person. When Hinojosa produced his driver's license, Officer Wonders took it from his hand, walked away from the vehicle with the license, and called Hinojosa's information in to the police dispatcher. The dispatcher ran a check on the license information and informed Officer Wonders that the license had been suspended and that Hinojosa was on parole. Because he had observed Hinojosa driving, Officer Wonders placed Hinojosa under arrest for driving with a suspended license. During the arrest, the officer asked Hinojosa whether he had anything illegal on him, and Hinojosa replied that he was carrying a pistol, which Officer Wonders removed from Hinojosa's waistband.

After being indicted for being a felon in possession of a firearm, Hinojosa moved to suppress the pistol, but the district court denied the motion. The court was skeptical that the officers had reasonable suspicion to support a *Terry* stop, but found that the officers engaged in a consensual encounter with Hinojosa. The district court found that the officers left Hinojosa a way of exiting the driveway, although the way may not have been his preferred means of exiting. The court concluded, based on credibility assessments, that Officer Wonders was probably accusatory in his questioning, that the officer had his hand on his gun, and that the officer held up his hand as he was approaching Hinojosa "to signal just a second, please, I would like to talk with you," but concluded that none of this behavior was threatening nor did it rise to the level of coercive conduct. Hinojosa pled guilty and timely appealed, challenging the denial of his motion to suppress.

Police officers are permitted to engage in so-called "consensual encounters" with citizens without running afoul of Fourth Amendment prohibitions on searches and seizures. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991); *United States v. Waldon*, 206 F.3d 597, 602–03 (6th Cir. 2000). "[T]here are three types of permissible encounters between the police and citizens:" a consensual encounter, an investigative detention or seizure of the person, and an arrest. *Waldon*, 206 F.3d at 602. A consensual encounter

"may be initiated without any objective level of suspicion." *Id.* (citation omitted). An investigative detention or seizure of the person "if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity." *Id.* (citation omitted). And an arrest is "valid only if supported by probable cause." *Id.* (citation omitted).

In light of all the circumstances present in this case, none of the officers' actions during the encounter with Hinojosa prior to the arrest, either individually or collectively, amounted to a seizure, and Hinojosa's arrest instead was the result of a consensual encounter. *See Michigan v. Chesternut*, 486 U.S. 567, 573–74 (1988); *United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007). The officers left Hinojosa a reasonable means of egress such that Hinojosa was physically capable of terminating the encounter and leaving the area at any time. *See United States v. Carr*, 674 F.3d 570, 573 (6th Cir. 2012). As the district court concluded, if Officer Wonders's hand was on his gun as he approached Hinojosa, it was reasonable under the circumstances and was neither threatening nor coercive. This action, given the officer's concerns about criminal activity in the area, was, in the court's words, "much different . . . from drawing a weapon out of a holster."

Moreover, Hinojosa clearly consented to the questioning. Although Officer Wonders may have held up his hand to indicate that he wanted to talk to Hinojosa, he then asked if he could discuss some questions with Hinojosa, and Hinojosa agreed to do so. This type of encounter is not a seizure. *See United States v. Peters*, 194 F.3d 692, 698 (6th Cir. 1999). Police officers "may approach individuals and propose initial questions without having any reasonable suspicion of criminal activity, if the police do nothing to convey to [the individual] that he is not free to leave." *Id.*

Likewise, the officers were free to ask for Hinojosa's identification, given that they did not condition Hinojosa's departure on his production of that identification or "convey a message that compliance with their requests is required." *See Florida v. Bostick*, 501 U.S. at 437; *United States v. Campbell*, 486 F.3d at 956. Although Hinojosa may have subjectively felt impelled—for instance by custom, courtesy, respect, or even eagerness to please—to hand over his license when the officer asked whether he

had identification, the law distinguishes a mere request for identification from a command for the same. *See United States v. Campbell*, 486 F.3d at 956–57.

Because the circumstances in this case support a conclusion that the encounter was a consensual one that did not rise to the level of an investigative detention or seizure, the district court was correct in denying Hinojosa's motion to suppress the pistol, and we affirm the district court's judgment.