[Cite as *State v. Crouse*, 2017-Ohio-1097.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | JUDGES: |
| --- | --- |
| | Hon. John W. Wise, J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, P. J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 16 CA 37 |
| WALTER F. CROUSE | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No. 15 CR 469


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      March 24, 2017


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

WILLIAM C. HAYES             MICHAEL R. DALSANTO
PROSECUTING ATTORNEY    22 West Main Street
BRIAN T. WALTZ               Suite 106
ASSISTANT PROSECUTOR     Newark, Ohio 43055
20 South Second Street, Fourth Floor
Newark, Ohio 43055

*Wise, John, J.*

{¶1} Appellant Walter F. Crouse appeals his conviction, in the Court of Common Pleas, Licking County, on one count of illegal possession of drugs (methamphetamine). Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} At about 12:04 PM on July 15, 2015, Detective Adam Hoskinson of the Central Ohio Drug Enforcement Task Force stopped at a gas station near Thornville, Ohio, while on routine patrol. He observed Appellant Crouse dispensing gasoline into a Chrysler 200 automobile. In Detective Hoskinson's words, "I recognized him as Walter Crouse, a known drug dealer and user for years that we'd been dealing with." Suppression Tr., December 9, 2015, at 21. A passenger, later identified as Jessica Rhinehart, was in the car's front passenger seat. Based on an encounter with appellant a few weeks prior, as well as a previous records inquiry, Hoskinson believed that appellant's driver's license was under suspension. While waiting at the gas station, Hoskinson ran a computer check of the license plate on the Chrysler appellant was in the process of fueling, and he discovered it was a rental vehicle registered with Enterprise Rent-A-Car.

{¶3} As Hoskinson continued monitoring the situation, appellant walked to the passenger side of the car, looked over at Hoskinson, and handed something to Jessica Rhinehart through the passenger window. Rhinehart appeared to move the item to a position out of Hoskinson's view. Appellant then went into the gas station's cashier and convenience store building. Rhinehart went inside as well.

{¶4} Hoskinson waited a couple of minutes, and then walked toward the front of the gas station convenience store building. Hoskinson believed that appellant was

waiting inside of the store to see if the detective might leave. Hoskinson, from his position several feet in front of the windows, at some point made eye contact with appellant and gestured for him to come outside. At about 12:10 PM, appellant exited the gas station building and began speaking with Hoskinson. Suppression Tr. at 24.

{¶5} At the onset of the conversation, Hoskinson spoke with appellant about "what he had been up to," but "did not give [appellant] any orders." *Id.* Hoskinson asked appellant about the status of his driver's license, and appellant admitted that it was suspended. Suppression Tr. at 27. Hoskinson asked why appellant was driving with his license suspended. Appellant responded that Rhinehart (the female who had been seen in the passenger seat) would be driving upon their departure from the gas station. Hoskinson interpreted this as an admission that appellant had been driving previously. Appellant at some point also volunteered that the Chrysler had been rented by his daughter, who was not present at the scene. Tr. at 34.

{¶6} Hoskinson asked if he could see appellant's identification. Suppression Tr. at 27-28. Appellant complied and walked to the rental vehicle to retrieve his identification card, which he gave to the detective. Hoskinson thereupon returned to his cruiser and ran a check on appellant's information. He soon confirmed that appellant's license had been suspended. Hoskinson asked for consent to search the rental vehicle, but appellant refused.

{¶7} After some additional conversation between the three persons, Hoskinson, at about 12:16 PM, commenced writing a citation for appellant's alleged driving under suspension. Suppression Tr. at 36-42.

**{¶8}** At about 12:20 PM, a second officer, Detective Tanner Vogelmeier, arrived and took over writing the citation. Suppression Tr. at 41. At this point, Det. Hoskinson deployed his K-9 partner, Buckeye, to perform a drug sniff of the vehicle. Suppression Tr. at 42. The dog alerted for the presence of illegal drugs. Suppression Tr. at 43. Based on the alert, Hoskinson searched the vehicle and located methamphetamine in a slot along the driver's side door. Suppression Tr. at 44. Hoskinson then placed appellant under arrest for possession of methamphetamine. Tr. at 46.

**{¶9}** Appellant was thereafter indicted by the Licking County Grand Jury on one count of possession of drugs, a felony of the third degree, in violation of Revised Code 2925.11(C)(1)(b). Appellant pled not guilty.

**{¶10}** Appellant filed a motion to suppress evidence on October 13, 2015. The State filed a memorandum in opposition on December 9, 2015. On the same day, following a hearing, the trial court denied appellant's motion to suppress from the bench. A judgment entry of denial was issued on December 10, 2105.

**{¶11}** At a subsequent change of plea hearing, appellant entered a plea of no contest plea to the drug possession charge. The trial court found appellant guilty and sentenced him to thirty months in prison.

**{¶12}** On June 3, 2016, appellant filed a notice of appeal. He herein raises the following two Assignments of Error:

**{¶13}** "I.  THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT DENIED THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE DET. HOSKINSON LACKED REASONABLE SUSPICION TO

DETAIN THE APPELLANT AND/OR LACKED PROBABLE CAUSE TO ISSUE HIM A CITATION.

{¶14} "II.   THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT DENIED THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE OFFICER IMPROPERLY PROLONGED THE STOP."

I.

{¶15}  In his First Assignment of Error, appellant contends on various grounds that the trial court erred in denying his motion to suppress. We disagree.

### Standards of Review

{¶16}  There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *See State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. The United States Supreme Court has held that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo*

on appeal. *See Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

*Detective's Initial Encounter with Appellant*

**{¶17}** We will first address Detective Hoskinson's initial encounter with appellant in the gas station parking lot, which appellant seeks to classify as a *Terry* stop.

**{¶18}** The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. "However, not every contact between police officer and citizen implicates the Fourth Amendment. 'Only when the officer, by means of physical force or show of authority, has in some way restricted the liberty of a citizen may we conclude that a "seizure" has occurred.' " *State v. Lopez*, 2nd Dist. Greene No. 94 CA 21, 1994 WL 527670, quoting *Terry, supra*, at 19, fn. 16. A *Terry* stop is an investigatory detention, more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest, and such a stop is valid if the officer had a reasonable and articulable suspicion of criminal activity. *See State v. Stonier*, 5th Dist. Stark No. 2012 CA 00179, 2013-Ohio-2188, ¶ 43. Ohio law accordingly recognizes a distinction between a *Terry* stop and a consensual encounter; the latter occurs "* * * when the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *State v. Daniels*, 5th Dist. Stark No. 2002CA00290, 2003-Ohio-2492, ¶ 12, quoting *State v. Taylor* (1995), 106 Ohio App.3d 741, 747, 667 N.E.2d 60.

{¶19} Thus, police officers are permitted to engage in "consensual encounters" with citizens without running afoul of Fourth Amendment prohibitions on searches and seizures. *See United States v. Hinojosa*, 534 Fed.Appx. 468, 470 (6th Cir. 2013), citing *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *United States v. Waldon,* 206 F.3d 597, 602–03 (6th Cir. 2000). Furthermore, a police officer's request to examine a person's identification does not render an encounter nonconsensual. *See Florida v. Bostick, supra,* citing *Immigration & Naturalization Serv. v. Delgado* (1984), 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247. *Accord State v. Miller,* 5th Dist. Licking No. 01 CA 79, 2002–Ohio–2465. The relevant inquiry is whether a reasonable person would feel free to disregard the officer's request and leave the scene. *See State v. Miller,* 148 Ohio App.3d 103, 107–108, 772 N.E.2d 175, 2002–Ohio–2389. We review the issue of the existence of a consensual encounter by examining the totality of the circumstances. *See Florida v. Royer* (1983), 460 U.S. 491, 506-507, 103 S.Ct. 1319, 75 L.Ed.2d 229.

{¶20} In the case *sub judice*, as noted in our recitation of facts, after fueling the rental car, appellant was seen handing something to the woman in the passenger seat, Ms. Rhinehart, through the passenger window. Appellant then went inside the gas station's convenience store, and, according to Hoskinson, "[i]t appeared he was waiting to see when I was going to leave." Tr. at 23. Hoskinson remembered him "peeking out" through the store windows about four or five times. *Id.* Hoskinson's added: "When I saw him in the gas station, I pointed, and then I was like, 'Come out to talk.' ([G]esturing with hand). I didn't give him a command but I just pointed at him, and it was like, you know, gave him a head gesture, and just kind of went like that (gesturing with hand), and he

came out and started talking to me." Tr. at 25. Hoskinson then "asked" to see appellant's ID card or license. Tr. at 28.

{¶21} Appellant essentially urges that Det. Hoskinson's "beckoning" of him to come outside and talk resulted in an unlawful police detention under the Fourth Amendment. However, upon review of the transcript and the security footage from the gas station, we find the initial encounter between appellant and Det. Hoskinson to be consensual for purposes of the Fourth Amendment. *See Brendlin v. California,* 551 U.S. 249, 255, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (indicating that a seizure occurs "[w]hen the actions of the police *** show an unambiguous intent to restrain"). *See*, *also*, *United States v. Hinojosa*, *supra*, at 470 (finding that officers had left the defendant with "a reasonable means of egress such that [he] was physically capable of terminating the encounter and leaving the area at any time.")

### *Detective's Subsequent Detainment of Appellant*

{¶22} Appellant next argues even if the Court finds the initial "detention" of him was proper and/or that it was a consensual encounter, the subsequent actions of the officers resulted in the incident turning into an improper detainment or custodial arrest prior to the K-9 drug sniff of the rental vehicle.

{¶23} We begin our analysis of this second issue with the observation that the scenario presented ultimately evolved into an automobile search, even though we are not dealing with a standard traffic stop. In other words, Detective Hoskinson did not follow the rental car in question on a roadway and proceed to pull it over; instead, the officer simply happened upon the vehicle while it was stationary and being fueled by appellant. We have previously recognized that in cases where a vehicle has independently

stopped, an officer may approach the vehicle for the purpose of conducting a routine investigation. *See*, *e.g.*, *State v. Diano,* 5th Dist. Stark No. 2003-CA-00061, 2003-Ohio-6363; *State v. Kegley*, 5th Dist. Ashland 95COA1126, 1996 WL 362802; and *State v. Paxton*, 5th Dist. Perry No. CA414, 1992 WL 100410.

**{¶24}** In the case *sub judice*, however, the facts take an unusual twist after Hoskinson's initial encounter with appellant. The officer, having confirmed appellant's I.D., decided to commence writing a citation to appellant for driving under a suspended license, even though he clearly testified that appellant was already outside of the car, putting fuel in the tank, when the officer had first observed him. *See* Tr. at 20-21. This preparation of a DUS citation (which was taken over by Det. Vogelmeier) extended the stop to provide time for the K-9 drug sniff. In sum, at the time Det. Hoskinson began issuing the citation, he had ascertained the following facts: (1) appellant was dispensing gasoline into the car; (2) Ms. Rhinehart was sitting in the passenger seat of the vehicle when he arrived; (3) appellant admitted to being under a suspended license; (4) appellant's LEADS report came back as having a suspended license; and (5) appellant stated that Ms. Rhinehart is "going to drive when we leave."

**{¶25}** "Under *Terry,* police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation." *State v. Swift*, 2nd Dist. Montgomery No. 27036, 2016-Ohio-8191, ¶ 10. However, "[s]ome contacts that start out as constitutional may *** at some unspecified point, cross the line and become an unconstitutional seizure." *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002). But an officer's reasonable articulable suspicion does

not require proof beyond a reasonable doubt that the defendant's conduct has satisfied the elements of the offense. *State v. Willis,* 5th Dist. Licking No. 14 CA 103, 2015–Ohio–3739, ¶ 25, citing *Westlake v. Kaplysh,* 118 Ohio App .3d 18, 20, 691 N.E.2d 1074 (8th Dist.1997).

**{¶26}** In this instance, Det. Hoskinson clearly was familiar with appellant and remembered, even before confirmation via the LEADS check, that appellant had had prior issues pertaining to a suspended license. *Cf. City of Akron v. Linn*, 9th Dist. Summit No. 18488, 1997 WL 775677 (finding that an officer, who recognized the driver of a pickup truck based on a DUS citation from a month earlier, "had reasonable suspicion based on specific and articulable facts" that the driver had engaged in the illegal act of driving under a suspended license). However, upon review of the unusual facts before us, we initially conclude that because Det. Hoskinson did not actually see appellant driving the vehicle, did not see him sitting in the driver's seat, and did not see him holding any car keys, combined with appellant's apparent lack of outstanding warrants and lack of admission to driving the car, we hold the officer lacked a reasonable, articulable suspicion to detain appellant for purposes of a DUS citation and thereby extend the initial encounter in the gas station parking lot, which led to the subsequent K-9 sniff search. *Cf. State v. Moore*, 9th Dist. Summit Nos. 22146, 22216, 2005-Ohio-3304, ¶ 19 (determining the stop and subsequent arrest of a defendant driving with a suspended license was valid where the evidence indicated that at the time, the police officers knew that defendant's license was suspended *and* they had observed him driving).

**{¶27}** Nonetheless, our analysis of this aspect of the incident is not yet complete, as Det. Hoskinson testified to an additional investigative concern he had at the scene,

*i.e.*, the question of unauthorized use of the rented Chrysler. Early on in their conversation, appellant told Hoskinson that his daughter had rented the vehicle and that he and Ms. Rhinehart were on their way to Myrtle Beach, South Carolina. Tr. at 34. According to Hoskinson: " ***[W]hen he had told me it was in his daughter's name who rented it without his daughter being there, I was not going to allow the vehicle to leave due to the fact that I don't know if he's even allowed to have the vehicle." Tr. at 37. As to the possibility at the time of immediately releasing the car to Rhinehart, a licensed driver, Hoskinson noted: "She was not on the rental agreement. She's of no relation to any of them, and I don't want to end up releasing something and it be reported stolen ***." Tr. at 38.[1]

{¶28} Accordingly, based on the potentiality of unauthorized use of the rented Chrysler under the circumstances, we find Detectives Hoskinson and Vogelmeier had reasonable grounds to continue the detainment for the given time frame and proceed with the sniff search by K-9 Buckeye. Therefore, the trial court did not err in declining to suppress the subsequently-seized evidence during the incident at issue, including the methamphetamine taken from the car and appellant's statements to the detectives subsequent to the K-9 search.[2]

{¶29} Appellant's First Assignment of Error is overruled.

---

[1]  On cross-examination, Hoskinson conceded he did not actually see the rental contract at the scene, but he had relied upon what appellant told him. *See* Tr. at 72.

[2]  Based on our conclusions at this juncture, we need not analyze the State's responsive argument that appellant lacks standing to challenge the search of a vehicle rented by a third party.

II.

**{¶30}** In his Second Assignment of Error, appellant again contends the trial court erred in denying his motion to suppress, asserting that the officers improperly prolonged the entirety of the events at the gas station. We disagree.

**{¶31}** It is well-established that "[r]easonable suspicion that a detainee is engaged in criminal activity must exist for as long as the detention does. The lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime." *State v. Smotherman, 6th Dist.* Wood No. 93WD082, 1994 WL 395128, citing *State v. Bevan* (1992), 80 Ohio App.3d 126, 130, 608 N.E.2d 1099.

**{¶32}** We first note that when a trained narcotics dog alerts on a lawfully stopped vehicle, an officer has probable cause to search the vehicle. *See State v. Greenwood,* 2nd Dist. Montgomery No. 19820, 2004–Ohio–2737, ¶ 11–12. Moreover, the use of such a trained narcotics dog does not constitute a "search" within the meaning of the Fourth Amendment. *State v. Hudson,* 2nd Dist. Miami No. 2003–CA–39, 2004–Ohio–3140, ¶ 19. In this instance, Det. Hoskinson chose to investigate by making contact at the scene with appellant and Rhinehart, so we do not answer today the compelling constitutional question of what would have resulted had the detectives instead simply proceeded with a K-9 sniff search of the vehicle while appellant and Rhinehart were inside the gas station, given that the car had been voluntarily driven in and parked at the gas pumps. Nonetheless, appellant succinctly urges that given the delay between Det. Hoskinson's arrival at the gas station (12:04 PM) and the K-9 search of the Chrysler (12:27 PM), which itself was about seven minutes after Det. Vogelmeier arrived to assist, the officers had effectively abandoned a legitimate traffic enforcement purpose and were instead

pursuing an improper means of drug interdiction. However, in light of our previous analysis herein, we find no reversible error in the trial court's denial of appellant's suppression motion on such grounds.

{¶33} Appellant's Second Assignment of Error is therefore overruled.

{¶34} For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, is hereby affirmed.

By: Wise, John, J.

Delaney, P. J., and

Baldwin, J., concur.

JWW/d 0303