[Cite as *State v. Saunders*, 2018-Ohio-2624.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. CT2017-0052 |
| JOSHUA D. SAUNDERS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No.  CR2016-0397


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      June 29, 2018


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

D. MICHAEL HADDOX      ERIC J. ALLEN
PROSECUTING ATTORNEY      THE LAW OFFICE of ERIC J. ALLEN, LTD
GERALD V. ANDERSON II      4605 Morse Road
ASSISTANT PROSECUTOR      Suite 201
27 North Fifth Street, P. O. Box 189      Gahanna, Ohio  43230
Zanesville, Ohio  43702-0189

*Wise, P. J.*

{¶1}   Defendant-Appellant Joshua D. Saunders appeals the decision of the Court of Common Pleas, Muskingum County, which denied his motion to suppress the results of a pedestrian stop and arrest effectuated by a Dresden police officer. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows:

{¶2}   At approximately 1:15 AM on September 8, 2016, Curtis Rogers, a police officer for the Village of Dresden, was on patrol in his cruiser in the vicinity of West Twelfth Street, which he later described as a "wrap-around [road] of a trailer complex" lacking any sidewalks. Supp.Tr. at 9. He then happened upon Appellant Saunders, who was walking down the roadway, toward the officer's cruiser, "staggering left to right." *Id.* Rogers stopped his vehicle, exited, and went to speak with appellant. *Id.* The officer "asked him to stop" and did not draw his weapon. Supp.Tr. at 10.

{¶3}   Appellant, when asked where he was coming from, stated that he had been at the local Circle K gas station. Officer Rogers did not believe him, based on his knowledge of the geography of the area. The officer observed that appellant's "speech was slightly slurred, and [that] his eyes were glassy." Supp.Tr. at 12. Rogers believed that appellant was under the influence of alcohol or drugs, and he asked to see identification. *Id.* Rogers further explained: "*** [H]e was walking down the roadway which is a safety hazard for himself. So I was checking his welfare at the time which is the reason I asked for his identification." *Id.* Appellant refused to provide any identification, even after being asked at least one more time. Supp.Tr. at 12-13. The only information he provided was that his first name was "Josh." Supp.Tr. at 29.

{¶4} As this encounter transpired, appellant kept his hands in the front pockets of his jeans. He also started "looking in the opposite direction," which, in the officer's experience, was a sign that he was looking for a means to flee. Supp. Tr. at 13. Officer Rogers asked appellant several times to remove his hands from his pockets, but appellant refused. Officer Rogers then grabbed appellant's left wrist and pulled appellant's left hand from his pocket. Appellant tried to pull away and began struggling with Rogers, trying to pull his arm free. Rogers then put appellant in a hold with his left arm behind his back and his right arm on the hood of the cruiser, close to the windshield. The officer made a radio call for assistance, and was thereafter able to get appellant handcuffed. Once appellant quit struggling, Rogers moved him in front of the cruiser and waited for back-up.

{¶5} In the interim, Officer Rogers asked appellant several times if he had anything in his pockets that might poke, stick, or hurt him. Appellant responded simply by claiming that the officer could not lawfully search his pockets.

{¶6} Deputy Brewer of the Muskingum County Sheriff's Office then arrived in response to Officer Roger's dispatch for assistance. Rogers then again asked appellant if he possibly had anything on his person that would poke or stick him. This time, appellant responded that he had a knife in his front right pocket.

{¶7} Rogers began a pat-down of appellant, but several items felt in his pockets prevented the officer from being able to tell where the purported knife was. Rogers therefore proceeded to empty all of appellant's pockets for officer safety.

{¶8} It was discovered, however, that appellant was not carrying a knife, but he did have a wallet, a metal "Altoids" mints can, a cell phone charger, and a napkin. After appellant was placed in the cruiser, Rogers opened the Altoids can, which contained

some papers and cardboard, a piece of aluminum foil, a pink baggie with a crystal-like white substance, a clear baggie with a fine white crystal-like substance, and another clear baggie containing additional baggies. The white crystal-like substance was later determined to be methamphetamine.

**{¶9}** Rogers initially arrested appellant for obstruction of official business and resisting arrest. Supp.Tr. at 22.

**{¶10}** On November 30, 2016, the Muskingum County Grand Jury indicted appellant on one count of possession of drugs (methamphetamine), a felony of the third degree, R.C. 2925.11(A), and one count of resisting arrest, a misdemeanor of the second degree, R.C. 2921.33(A).

**{¶11}** Appellant was arraigned on March 17, 2017. At that time, pleas of not guilty were entered on his behalf on each count. Defense counsel was also appointed.

**{¶12}** On May 4, 2017, appellant filed a motion to suppress. A hearing on the motion was set for May 25, 2017, and later continued until June 16, 2017. On said date, after hearing the testimony and arguments of counsel, the trial court overruled the motion to suppress.

**{¶13}** On June 19, 2017, appellant entered pleas of no contest to the two charges. On June 26, 2017, the court accepted the no contest pleas, and made a finding of guilty on both counts. However, the resisting arrest charge was thereafter dismissed by agreement of the parties.

**{¶14}** Sentencing was scheduled for July 31, 2017, and the trial court ordered the preparation of a presentence investigation report.

**{¶15}** However, in the meantime, on July 21, 2017, appellant was arrested and bond was revoked for violating the fourth condition of his bond.

**{¶16}** On August 2, 2017, the trial court sentenced appellant to thirty months in prison and a mandatory fine of five thousand dollars. The court further notified appellant of three years of post-release control (optional), as well as the consequences for violating the conditions of PRC imposed by the Parole Board under R.C. 2967.28.

**{¶17}** On August 11, 2017, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

**{¶18}** "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS AS THE POLICE VIOLATED HIS FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCH AND SEIZURE MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT."

I.

**{¶19}** In his sole Assignment of Error, appellant challenges the trial court's denial of his motion to suppress.

### Standard of Review

**{¶20}** The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

**{¶21}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact.

Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *See State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. The United States Supreme Court has held that "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

### *Scope of Present Appellate Review*

{¶22} As an initial matter, we note appellant's brief lacks a statement of the issues presented for review. *See* App.R. 16(A)(4). We nonetheless find appellant herein limits his argument to whether there was "reasonable suspicion justifying the investigative stop." *See* Appellant's Brief at 4. This differs from the focal issue set forth in his motion to suppress at the trial court, wherein appellant (then represented by a different attorney) maintained that his *arrest* for obstruction of official business and resisting arrest was unlawful. *See* Docket Item 13; Supp.Tr. at 4. Under the general rule of Crim.R. 47, a motion to suppress "shall state with particularity the grounds upon which it is made." Failure of the defendant to adequately raise the basis of his or her challenge constitutes

a waiver of that issue on appeal. *See City of Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218–219, 524 N.E.2d 889.

**{¶23}** However, in the interest of justice we will address the issue before us on the merits.

### *Initial Encounter between Appellant and Officer Rogers*

**{¶24}** Police officers are permitted to engage in "consensual encounters" with citizens without running afoul of Fourth Amendment prohibitions on searches and seizures. *See United States v. Hinojosa*, 534 Fed.Appx. 468, 470 (6th Cir. 2013), citing *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *United States v. Waldon,* 206 F.3d 597, 602–03 (6th Cir. 2000). A consensual encounter occurs "* * * when the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *State v. Daniels*, 5th Dist. Stark No. 2002CA00290, 2003–Ohio–2492, ¶ 12, quoting *State v. Taylor* (1995), 106 Ohio App.3d 741, 747, 667 N.E.2d 60. We review the issue of the existence of a consensual encounter by examining the totality of the circumstances. *See Florida v. Royer* (1983), 460 U.S. 491, 506–507, 103 S.Ct. 1319, 75 L.Ed.2d 229.

**{¶25}** Upon review of the record in the case *sub judice*, we find Officer Rogers' initial contact with appellant on West Twelfth Street constituted a valid consensual encounter. The officer was clearly in the scope of his duties in making a "welfare check" on someone walking in a staggering fashion on a public street at 1:15 AM. Furthermore, police officers are not required to possess reasonable suspicion of criminal activity when exercising "community caretaking" functions. *State v. Chapa,* 10th Dist. No. 04AP-66, 2004-Ohio-5070, ¶8.

**{¶26}** However, because some contacts that start out as constitutional may at some point cross a line and become an unconstitutional seizure (*see United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002) ), we next consider the constitutionality of the next stage of Officer Rogers' stop of appellant.

## Terry Stop

**{¶27}** "Under *Terry* [*supra*], police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation." *State v. Swift*, 2nd Dist. Montgomery No. 27036, 2016–Ohio–8191, ¶ 10. A *Terry* stop is an investigatory detention, more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. *See State v. Stonier*, 5th Dist. Stark No. 2012 CA 00179, 2013–Ohio–2188, ¶ 43. Reasonable suspicion constitutes something less than probable cause. *State v. Carlson* (1995), 102 Ohio App.3d 585, 590. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.

**{¶28}** In the case *sub judice*, Officer Rogers, having previously observed appellant staggering on a public street, also observed his slurred speech and glassy eyes during their initial conversation. Appellant in the meantime exacerbated the situation by refusing, after being asked, to remove his hands from his pockets for the safety of the officer. While we recognize that public intoxication normally is a minor misdemeanor in Ohio (R.C. 2917.11(B)), a minor misdemeanor may become an arrestable offense, instead of merely the basis for a citation, if "the offender requires medical care or is unable to provide for his own safety." *State v. Greene*, 2nd Dist. Montgomery No. 19163, 2002-Ohio-1886,

citing R.C. 2935.26(A)(1). As such, we find a reasonable, articulable suspicion of a pedestrian's public intoxication may provide a basis for a *Terry* stop. Therefore, even though in this instance Officer Rogers' initial focus was on appellant's welfare, and appellant was never actually charged with public intoxication, under the circumstances presented we conclude the State demonstrated a reasonable articulable suspicion of criminal activity justifying an expansion of the initial consensual encounter into a pedestrian *Terry* stop.

### *Conclusion*

**{¶29}** Upon review, we find no error in the trial court's denial of the motion to suppress regarding the question of the investigative stop of appellant by the officer.

**{¶30}** Appellant's sole Assignment of Error is therefore overruled.

**{¶31}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is hereby affirmed.

By: Wise, P. J.

Hoffman, J., and

Baldwin, J., concur.

JWW/d 0607