[Cite as *State v. Terry*, 2024-Ohio-2723.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
|     Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 24 CA 00011 |
| CHAD TERRY | |
|     Defendant-Appellant | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 22 CR 00529 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 18, 2024 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| KENNETH W. OSWALT<br>ASSISTANT PROSECUTOR<br>20 South Second Street<br>4th Floor<br>Newark, Ohio  43055 | STEPHEN T. WOLFE<br>WOLFE & MOTE LAW GROUP, LLC<br>1500 West 3rd Avenue<br>Suite 325<br>Columbus, Ohio  43212 |

*Wise, J.*

{¶1}   Defendant-Appellant Chad Terry appeals his conviction on one count of aggravated trafficking in methamphetamine and one count of possession of methamphetamine entered in the Licking County Court of Common Pleas following a no-contest plea.

{¶2}   Appellee is the state of Ohio.

**STATEMENT OF THE FACTS AND CASE**

{¶3}   For purposes of this appeal, the relevant facts and procedural history are as follows:

{¶4}   On November 3, 2022, Appellant Chad Terry was indicted on one count of Aggravated Possession of Methamphetamine, in violation of R.C. §2925.11(A)(C)(1)(c), and one count of Aggravated Trafficking in Methamphetamine, in violation of R.C. §2925.03(A)(2)(C)(1)(d), both felonies of the second degree.

{¶5}   On January 9, 2023, Appellant filed a motion to suppress raising three issues: (1) there was no reasonable and articulable suspicion to detain him; (2) there was no lawful reason to search his motor vehicle, and (3) the search was done without a warrant; and any statements obtained were without the benefit of *Miranda* warnings.

{¶6}   On March 24, 2023, a hearing was conducted on Appellant's motion to suppress. At the outset of the motion, Appellant's counsel indicated that he was only arguing whether there was no reasonable, articulable suspicion to seize and detain Appellant and was waiving the other two arguments raised in the motion. (Supp. T. at 4-5).

{¶7} At the suppression hearing, the trial court heard testimony and received evidence from one witness: Det. Benjamin Martens. Det. Martens testified as to the following events:

{¶8} On Friday, July 15, 2022, at approximately 12:30 a.m., Det. Martens was on drug interdiction duty in Hebron, Licking County, Ohio, when he drove past the Lighthouse Memorial Church located at 2600 Walnut Rd. NE, and noticed a red pickup truck near a light pole, in the otherwise empty parking lot. (Supp. T. at 7, 8, 10). The truck was not parked within the lines of the marked parking spots. (Supp. T. at 10). As he drove past the truck, he was able to see a male in the driver's seat with his head back and mouth open, as if he was possibly passed out. *Id.* Det. Martens then turned around and pulled into the parking lot, behind the vehicle. (Supp. T. at 11).

{¶9} The parking lot is public and does not have any signs that say "no trespassing." (Supp. T. at 22-23). Nobody from the church requested that he speak with the person in the truck, but, knowing that people had previously requested checks of the parking lot due to criminal activity, he decided to perform a "welfare check." (Supp. T. at 9, 25, 27).

{¶10} Det. Martens first ran the plates of the truck, which came back as being registered to an elderly woman, later determined to be Appellant Chad Terry's mother. (Supp. T. at 13, 35). As Det. Martens approached the truck, he observed Appellant in the driver's seat, asleep, with his mouth open and his hand in a Taco Bell bag. (Supp. T. at 10, 19). Det. Martens also observed a large, fixed-blade knife on the visor on the passenger side of the vehicle. (Supp. T. at 14). When asked to produce his license, Appellant picked up a Taco Bell food bag which was on his lap and showed the officer

the packets of sauces in the bottom of the bag. (Supp. T. at 14). Det. Martens testified that he asked Appellant to exit the vehicle and Appellant voluntarily placed his hands over his head. (Supp. T. at 14-15). Det. Martens conducted a pat-down search and ran Appellant's identification through the computer which indicated that he had a suspended driver's license. (Supp. T. at 15, 17, 34). At that time, Det. Martens informed Appellant that he would not be permitted to drive the vehicle away. (Supp. T. at 16). Appellant asked that his girlfriend be permitted to come and pick him up. (Supp. T. at 17-18). Det. Martens radioed dispatch and inquired as to whether there was a canine drug sniffing unit in the area that could swing by. (Supp. T. at 19). Det. Martens then handed Appellant his phone so that he could call his girlfriend to pick him up. (Supp. T. at 20). While Appellant was waiting for his girlfriend to arrive to pick him up, Det. Martens placed no restrictions on Appellant as to who he could call or text, nor did he place any restrictions on his movements, as he was free to move around the parking lot. (Supp. T. at 21).

{¶11} Prior to Appellant's girlfriend arriving to pick him up, the canine unit arrived on the scene. (Supp. T. at 21). The canine alerted, and eight baggies of a crystal-like substance were located, which were later tested and determined to be 23.219 grams of methamphetamine. (Sent. T. at 13).

{¶12} During Det. Martens testimony, his body-cam video footage was played for the trial court and was admitted into evidence. (Supp. T. at 12, 44).

{¶13} At the conclusion of the hearing, the trial court indicated that it would issue a written decision at a later date. (Supp. T. at 46).

{¶14} On May 2, 2023, the trial court issued a decision denying Appellant's motion to suppress.

**{¶15}** On July 10, 2023, a capias was issued for Appellant's arrest.

**{¶16}** On or about November 6, 2023, Appellant was arrested on the capias and new counsel was appointed.

**{¶17}** On January 4, 2024, Appellant entered pleas of no contest to the two counts contained in the indictment. (Sent. T. at 11).

**{¶18}** The trial court sentenced Appellant to an indefinite prison sentence of not less than four (4) years and not more than six (6) years in a state penitentiary. (Sent. T. at 14).

**{¶19}** Appellant now appeals, raising the following assignment of error:

## ASSIGNMENT OF ERROR

**{¶20}** "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS."

## I.

**{¶21}** In his sole Assignment of Error, Appellant argues the trial court erred in denying his motion to suppress. We disagree.

### *Standard of Review*

**{¶22}** Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145 (4th Dist.1996). Accepting these

facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42 (4th Dist.1993), overruled on other grounds.

{¶23} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592 (1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93 (1994); *State v. Claytor*, 85 Ohio App.3d 623 (1993); *Guysinger*, supra. As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

**{¶24}** When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap*, 1995-Ohio-243; *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982).

**{¶25}** Appellant herein is arguing that "the trial court applied the wrong test to the correct facts and ultimately reached the wrong conclusion when it found that the search and seizure were pursuant to a valid *Terry* stop."

*Analysis*

**{¶26}** We will first address Det. Marten's initial encounter with Appellant in the church parking lot, which Appellant seeks to classify as a *Terry* stop. *See, State v. Crouse,* 2017-Ohio-1097, ¶ 17 (5th Dist.).

**{¶27}** The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio,* 392 U.S. 1; *State v. Andrews,* 57 Ohio St.3d 86, 87 (1991). "However, not every contact between a police officer and citizen implicates the Fourth Amendment. "Only when the officer, by means of physical force or show of authority, has in some way restricted the liberty of a citizen may we conclude that a 'seizure' has occurred." 94 CA 21 (2nd Dist. 1994), *quoting Terry*, *supra*, at 19, fn. 16, 88.

**{¶28}** Upon review, we find Det. Marten's conversation with Appellant to have been a consensual encounter. Ohio law recognizes three types of police-citizen encounters: consensual encounters, *Terry* stops, and arrests. *State v. Taylor,* 106 Ohio App.3d 741, 747-49 (2nd Dist.1995).

{¶29} A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to refuse to answer and walk away. *Id*. at 747. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick,* 501 U.S. 429, 434 (1991); *see also INS v. Delgado*, 466 U.S. 210, 212, (1984). "[M]erely approaching an individual on the street or in another public place[,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers*, 909 F.2d 145, 147 (6th Cir.1990). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick*, 501 U.S. at 434–435 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer*, 460 U.S. 491, 497–98 (1983). Moreover, he may not be detained even momentarily for his refusal to listen or answer. *Id.* So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.*, 499 U.S. 621, 628 (1991), the encounter is consensual and no reasonable suspicion is required. *Bostick*, 501 U.S. at 434.

{¶30} A consensual encounter does not implicate the Fourth Amendment's protection against unreasonable searches and seizures unless the police officer has restrained the person's liberty by a show of authority or physical force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Id.* at 747–48.

**{¶31}** "The second type of encounter is a '*Terry* stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions." *Id.* at 748. Such a stop is valid if the officer had reasonable and articulable suspicions of criminal activity. *Id.* at 749. However, for the propriety of a brief investigatory stop pursuant to *Terry*, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminal and locations. Katz, Ohio Arrest, Search and Seizure (2001 Ed.), 83–88, Sections. 3.12–3.19.

**{¶32}** A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. This temporary detention, although a seizure, does not violate the Fourth Amendment.

**{¶33}** The third type of police-citizen encounter is an arrest. For an arrest to be valid the officer must have "probable cause to believe a crime has been committed and

the person stopped committed it." *State v. Richardson*, 2005-Ohio-554, ¶ 27 (5th Dist.); *Flowers, supra,* 909 F.2d at 147.

**{¶34}** The first issue we must address is whether in fact the stop in this case was a *Terry* stop or a consensual police encounter. We review the issue of the existence of a consensual encounter by examining the totality of the circumstances. *See Florida v. Royer*, 460 U.S. 491, 506–507 (1983).

**{¶35}** This Court has previously recognized a distinction between a *Terry* stop and a consensual encounter. *State v. Daniels*,  2003-Ohio-2492 (5th Dist.), *quoting Taylor*, *supra*, 106 Ohio App.3d 741, 747 (2nd Dist.1995). A consensual encounter occurs " * * * when the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *State v. Daniels*, 2003-Ohio-2492, ¶ 12 (5th Dist.)., *quoting State v. Taylor*, 106 Ohio App.3d 741, 747 (1995). Thus, police officers are permitted to engage in "consensual encounters" with citizens without running afoul of Fourth Amendment prohibitions on searches and seizures. *See United States v. Hinojosa*, 534 Fed.Appx. 468, 470 (6th Cir. 2013), *citing Florida v. Bostick,* 501 U.S. 429, 434 (1991); *United States v. Waldon,* 206 F.3d 597, 602–03 (6th Cir. 2000). Furthermore, a police officer's request to examine a person's identification does not render an encounter nonconsensual. *See Florida v. Bostick, supra, citing Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216 (1984). *Accord State v. Miller,* 2002-Ohio-2465 (5th Dist.). The relevant inquiry is whether a reasonable person would feel free to disregard the officer's request and leave the scene. *See State v. Miller,* 2002-Ohio-2389.

**{¶36}** Upon review, under the totality of the circumstances, we find that the events in the case *sub judice* constituted a consensual encounter such that the Fourth Amendment was not implicated. *United States v. Mendenhall*, 446 U.S. 544 (1980). As set forth above, Det. Martens approached Appellant, asleep in his vehicle, which was not even parked in a parking spot, in an empty church parking lot, after midnight. "[A]pproaching the occupants of a parked car to ask questions does not constitute a seizure." *State v. Jack*, 2004-Ohio-775(2nd Dist.), *citing State v. Carter*, 2004-Ohio-454, (2nd Dist.). Det. Martens did not block the vehicle, did not have his lights activated, and did not have his weapon drawn, nor did he direct any orders at Appellant. *State v. Imani,* 2017-Ohio-8113 ¶ 26 (5th Dist.).

**{¶37}** While Appellant argues Marten's approach and the ensuing conversation resulted in an unlawful police detention under the Fourth Amendment, we find the encounter between Appellant and Martens to be consensual for purposes of the Fourth Amendment because Martens had no reason or intent to detain Appellant at that point. Det. Marten's approach of Appellant in the parking lot and their ensuing conversation was entirely voluntary and Appellant was free to leave.

**{¶38}** Martens did not activate his lights or siren, he did not block Appellant's vehicle with his cruiser, he did not place Appellant in the back of the cruiser or place him in handcuffs. *Crouse*, *supra*, 2017-Ohio-1097, ¶ 21 (5th Dist.), citing *Brendlin v. California,* 551 U.S. 249, 255 (2007), (indicating that a seizure occurs "[w]hen the actions of the police *** show an unambiguous intent to restrain"). *See*, *also*, *United States v. Hinojosa*, *supra*, at 470 (finding that officers had left the defendant with "a reasonable means of

egress such that [he] was physically capable of terminating the encounter and leaving the area at any time.")

{¶39} Appellant also argues even if the Court finds the initial "detention" was proper and/or that it was a consensual encounter, the subsequent actions of the officer exceeded the scope of the possible trespassing violation and resulted in the incident turning into an improper detainment or custodial arrest prior to the K-9 drug sniff of the vehicle.

{¶40} Det. Marten's request for Appellant to exit his vehicle did not change the consensual nature of the encounter. An officer may ask a person to exit a vehicle during a lawful traffic stop without having reasonable suspicion of any further criminal activity. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *State v. Kirby*, 2024-Ohio-2543, ¶ 25 (5th Dist.).

{¶41} Likewise, Det. Marten's request for identification did not cause the encounter to become nonconsensual. *State v. Isles*, 2020-Ohio-3061 (5th Dist.) ("a request for identification, in and of itself, is not unconstitutional, and is ordinarily characterized as a consensual encounter, not a custodial search) and *State v. Matheny*, 2022-Ohio-3447 (5th Dist).

{¶42} Although Appellant did not challenge what occurred past this point, we find the use of a drug-detection dog does not constitute a "search" and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. *State v. Camp*, 2014-Ohio-329 ¶30 (5th Dist.), *citing Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *United States v. Place*, 462 U.S. 696 (1983); *State v. Carlson*, 102 Ohio App.3d 585, 594 (9th Dist.1995); *United States v. Seals*, 987

F.2d 1102, 1106 (5th Cir. 1993). Further, if a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband. *United States v. Reed*, 141 F.3d 644 (6th Cir. 1998) *(quoting United States v. Berry*, 90 F.3d 148, 153 (6th Cir. 1996), cert. denied 519 U.S. 999 (1996)); *accord*, *United States v. Hill*, 195 F.3d 258, 273 (6th Cir. 1999); *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994); *State v. French*, 104 Ohio App.3d 740 (12th Dist.1995), abrogated on different grounds, *City of Dayton v. Erickson*, 76 Ohio St.3d 3 (1996).

**{¶43}** Once the drug-sniffing canine alerted to Appellant's car, the officers had probable cause to search that vehicle for contraband. *Id.* No violation of Appellant's Fourth Amendment rights has been demonstrated. *Id.*

*Lack of Causal Connection*

**{¶44}** While Appellant is not challenging anything that happened after the canine unit arrived or that Det. Martens called for a canine unit, Appellant seems to be making an argument that any evidence seized should have been suppressed under the doctrine of derivative evidence. The derivative evidence rule "holds that evidence is illegally seized, and must be suppressed, when its discovery was the product of a constitutional violation." *State v. Adams,* 2011-Ohio-4008, ¶ 20 (2nd Dist.). " 'There must be a causal connection between the constitutional violation and the derivative evidence for the latter to be suppressed. This stands to reason because the latter is excluded solely because of its connection to the constitutional violation.' *Katz*, 'Ohio Arrest, Search and Seizure,' 2008 Ed., § 28:3." *Id.; See State v. Addison*, 5th Dist. 2022-Ohio-2440, ¶¶ 10-11(5th Dist.).

**{¶45}** As set forth above, we do not find a constitutional violation in this case.

**{¶46}** Appellant's assignment of error is overruled.

**{¶47}** The judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed

By: Wise, J.

Delaney, P. J., and

Gwin, J., concur.

JWW/kw (0717)