[Cite as *State v. Fawcett*, 2020-Ohio-1004.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| KEVIN R. FAWCETT, JR. | : | Case No. 19CA000027 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:　　　　Appeal from the Knox County Court
　　　　　　　　　　　　　　　　　　　　of Common Pleas, Case No.
　　　　　　　　　　　　　　　　　　　　18CR07-0210


JUDGMENT:　　　　　　　　　　　　　Affirmed


DATE OF JUDGMENT:　　　　　　　　March 12, 2020


APPEARANCES:

For Plaintiff-Appellee　　　　　　　　　For Defendant-Appellant

CHARLES T. MCCONVILLE　　　　　　KEVIN J. GALL
Knox County Prosecutor　　　　　　　　DalSanto & Gall, LLC
117 East High Street, Suite 234　　　　　33 West Main Street. Suite 109
Mount Vernon, Ohio 43050　　　　　　　Newark, Ohio 43055

*Baldwin, J.*

{¶1}   Defendant-appellant Kevin Fawcett, Jr. appeals from the denial by the Knox County Court of Common Pleas of his Motion to Suppress.  Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On July 2, 2018, the Knox County Grand Jury indicted appellant on one count of carrying concealed weapons in violation of R.C. 2923.12(A)(1), a misdemeanor of the first degree, and one count of  aggravated possession of drugs in violation of R.C. 2925.11(A), a felony of the second degree. The indictment also contained a forfeiture specification. At his arraignment on July 3, 2018, appellant entered a plea of not guilty to the charges.

{¶3}   Appellant, on January 25, 2019, filed a Motion to Suppress, arguing that the search of appellant's vehicle was illegal because it was conducted without a warrant or probable cause. A hearing on the motion was held on March 14, 2019.

{¶4}   Detective Jessica Butler of the Mount Vernon Police Department testified that on June 17, 2018, she was working as a drug interdiction officer and had specialized training in drug investigations. On June 17, 2018, she was on duty and was in uniform driving a marked police department vehicle. Detective Butler testified that at approximately 8:23 p.m., she observed appellant drive past her driving a red Honda.  She testified that a few months before, she had issued appellant a citation for driving under suspension and ran him through LEADS.  She then learned that appellant's license was suspended and that the plate on the Honda was to a different vehicle.  Detective Butler testified that the plate came back to a black Honda with a different year.  She further

testified that the VIN came back to a female and the plate to a male. Detective Butler initiated a traffic stop of appellant's vehicle.

{¶5}   Detective Butler testified that appellant "was making furtive movements, kind of moving all over the front of the vehicle. It made me pretty nervous. I'm familiar with [appellant's] history involving loaded weapons in vehicles and narcotics. I asked for other officers to assist me as [appellant] eventually pulled over."   Transcript of suppression hearing at 10. When she asked appellant if he had any weapons, he pointed towards the passenger floorboard. A BB gun with a silencer on it was on the front passenger floorboard. Detective Butler testified that the BB gun looked like a real gun.

{¶6}   Back-up units arrived shortly thereafter. Appellant, who was the only occupant in the vehicle, told Detective Butler than the vehicle belonged to his brother and that he was just driving it. Detective Butler decided to impound the vehicle because appellant had a suspended license and was the only person in the vehicle, because they were stopped in the roadway where there was no place to park, and because the plates did not match the VIN which came back to a woman in Licking County.

{¶7}   Appellant was removed from the vehicle because the officers wanted to make sure that the gun was, in fact, a BB gun. He was detained and placed in handcuffs, although he was not told that he was under arrest at that point.   Detective Butler testified that Mount Vernon had had policy since 1990 for vehicle inventories and that she was trained on following Mount Vernon's policy.  While awaiting a tow truck, Detective Butler and Patrolman Miller began inventorying the vehicle. During the search, they found two swords directly behind the driver's seat sitting on that back seat and a bullet at the center console area near the gear shift. The officer testified that the bullet was a .22 short for a

tiny gun. Appellant, when asked if there were any weapons, specifically a gun, on him or in his vehicle, "was not very happy with the question, said there was not." Transcript of suppression hearing at 19.   Upon finding the swords, Detective Butler told appellant that he was being arrested for carrying concealed weapons.   A search of appellant's person yielded BBs in his pocket for the BB gun.   During the search of the vehicle, Detective Butler testified that she found that the center console was "off center, like you could tell it had been lifted up." Transcript of suppression hearing at 21. When she popped up the center console, she found a cigarette pack containing three baggies of methamphetamines and a smoking drug pipe with residue. She testified that the cigarette pack contained "ends of baggies, like sticking out of it, and you could tell there was something in there." Transcript of suppression hearing at 22.  Testing later confirmed the substance to be methamphetamine.

{¶8}   On cross-examination, Detective Butler testified that she removed the center console even though she did not have a search warrant because she was looking for a gun and did not want to put the vehicle in the outside impound lot with a gun in it. On redirect, she testified that the center console was not attached with any screws and that when she lifted it up, it popped up. The center console was directly next to the driver's seat.

{¶9}   Patrolman Zachary Miller of the Mount Vernon Police Department testified that he responded to a call for back-up assistance from Detective Butler. He testified that during the inventory search, he found a metal pipe on the back seat that had a "switch or lever in the middle of it." Transcript of suppression hearing at 42. When he operated the lever, he discovered two concealed blades. Detective Butler advised him that it was a

weapon.  After appellant was arrested and transported to jail, Patrolman Miller found two bats in the trunk area with writing on them and a .22 caliber short round. The round of ammunition was found near the gear shift.

{¶10} Pursuant to a Decision and Entry filed on March 27, 2019, the trial court denied the Motion to Suppress.  The trial court found that the further search of the vehicle, including the console area, was justified by the inventory search and based upon probable cause that the vehicle contained "additional evidence of the presence of a pistol capable of firing the .22 caliber round found on the top of the console."

{¶11} On June 4, 2019, appellant pleaded no contest to aggravated possession of drugs and the remaining count and forfeiture specification were dismissed. As memorialized in a Sentencing Entry filed on July 5, 2019, appellant was sentenced to five years in prison.

{¶12} Appellant now raises the following assignment of error on appeal:

{¶13} "I. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS."

I

{¶14} Appellant, in his sole assignment of error, argues that the trial court erred in denying his Motion to Suppress. We disagree.

{¶15} Appellate review of a trial court's decision to grant or deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 713 N.E.2d 1 (4th Dist. 1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243,

652 N.E.2d 988. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist. 1993), overruled on other grounds.

{¶16} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist. 1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 620 N.E.2d 906 (8th Dist. 1994).

{¶17} In the case sub judice, the trial court denied appellant's Motion to Suppress on two grounds. The trial court found that the further search of the vehicle, including the console area, was justified by the inventory search and based upon probable cause that

the vehicle contained "additional evidence of the presence of a pistol capable of firing the .22 caliber round found on the top of the console."

{¶18} "Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities." *State v. Mesa*, 87 Ohio St.3d 105, 108, 1999-Ohio-253, 717 N.E.2d 329, *citing South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). "Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated." *Mesa* at 108, *citing Opperman* at 370, 96 S.Ct. 3092. "Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness." *Mesa* at 108.

{¶19} In Ohio, a standard inventory search of a lawfully impounded automobile is permissible. *State v. Robinson*, 58 Ohio St.2d 478, 12 O.O.3d 394, 391 N.E.2d 317 (1979), syllabus.

{¶20} As noted by the Ohio Supreme Court in *Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, 810 N.E.2d 810 at paragraph 11:

While focusing primarily on inventory searches rather than impoundment, *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, is instructive. The United States Supreme Court concluded that a routine inventory search of a lawfully impounded vehicle is not unreasonable within the meaning of the Fourth Amendment when

performed pursuant to standard police practice and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle. The court held that "[i]n the interests of public safety and as part of what the Court has called 'community caretaking functions,' * * * automobiles are frequently taken into police custody. * * * The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." Id. at 368–369, 96 S.Ct. 3092, 49 L.Ed.2d 1000, quoting **813 *Cady v. Dombrowski* (1973), 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706. See, also, *State v. Robinson* (1979), 58 Ohio St.2d 478, 480, 12 O.O.3d 394, 391 N.E.2d 317.

**{¶21}** Here, the evidence shows that Detective Butler had legitimate reasons to impound appellant's vehicle. Detective Butler testified that she decided to impound the vehicle because appellant had a suspended license and was the only person in the vehicle, because they were stopped in the roadway where there was no place to park, and because the plates did not match the VIN which came back to a woman in Licking County.

**{¶22}** In the case sub judice, Detective Butler testified that the inventory search was conducted in accordance with the Mount Vernon Police Department policy, which was admitted into evidence. The following testimony was adduced when she was asked about the Mount Vernon policy relating to the inventory of impounded vehicles:

**{¶23}** Q: And tell me what the Mount Vernon policy is about inventory of vehicles that are impounded?

**{¶24}** A:  Would you like me to sum it up or read the  - -

**{¶25}** Q:  Well, you can sum it up.

**{¶26}** A:  Okay.

**{¶27}** Q:  Or read from the appropriate section, that's - -  that's fine too.

**{¶28}** A:  Well, let me see if I can.

**{¶29}** Q:  I mean your understanding of the policy is obviously relevant to this proceeding.

**{¶30}** A:  Yeah.  During the inventory obviously we're going to, anything of value, over $25 we need to put on the inventory sheet.  We need to note that, you know, it was in there. That way in case something happens, if it gets broken into or something comes up missing, we have it on record that that was in the vehicle.  During that we can look in like glove boxes, just kind of search in - - in and around the vehicle, open up the glove box, center console, see if there's anything of value.

**{¶31}** Transcript of Suppression hearing at 17-18.

**{¶32}** The United States Supreme Court recognizes an "automobile exception" to the Fourth Amendment's requirement that police officers must generally obtain a warrant before conducting a search. *State v. Ivery*, 11th Dist Lake No.2011–L–081, 2012–Ohio–1270, ¶ 23, *citing California v. Carney*, 471 U.S. 386, 390 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Under the automobile exception, there is no need to demonstrate that a "separate exigency" exists to justify the search. *Id., citing Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). "If a car is readily mobile and probable cause exists to believe that it contains contraband, the Fourth Amendment thus permits police

to search the vehicle without more." *Id.*, citing *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

**{¶33}** In *United States v. Ross*, the United States Supreme Court clarified restrictions which the Fourth Amendment places on vehicle searches, holding that the permissible scope of a vehicle search is "no greater than a magistrate could have authorized by issuing a warrant based on the probable cause that justified the search." 456 U.S. 798, 818, 102 S.Ct. 2157, 72 L.Ed.2d 572(1982). Thus, compartments and packages within a vehicle, which could contain the illicit object for which the police have probable cause to believe exists, may also be searched. *State v. Gonzales*, 6th Dist. Wood No. WD–07–060, 2009–Ohio–168, ¶ 17. After an officer has probable cause to believe that a vehicle contains contraband, a permissible search of the vehicle is "defined by the object of the search and the places in which there is probable cause to believe it may be found." *Ross*, *supra*, at 824.

**{¶34}** While conducting the inventory search, Detective Butler found a concealed weapon and a .22 "short, tiny bullet for a tiny gun" in the center console area near the gear shift. Transcript of suppression hearing at 19. In response to finding the bullet, she asked appellant if there were any weapons, specifically a gun, on him or in his vehicle. According to her, "he was not very happy with the question. He said there was not." Id. The officers then performed a weapon search of the vehicle.

**{¶35}** Based on the foregoing, we find that the officers conducted a lawful inventory of appellant's impounded vehicle pursuant to police policy and that that the officers had probable cause to further search for the presence weapons, including searching the center console, after finding the bullet and the swords.

{¶36} Based on the foregoing, we find that the trial court did not err in denying appellants Motion to Suppress. We concur with the trial court that further search of the vehicle, including the console area, was justified by the inventory search and based upon probable cause that the vehicle contained "additional evidence of the presence of a pistol capable of firing the .22 caliber round found on the top of the console."

{¶37} Appellant's sole assignment of error is, therefore, overruled.

{¶38} Accordingly, the judgment of the Knox County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, John, P.J. and

Wise, Earle, J. concur.