[Cite as *State v. Matheny*, 2022-Ohio-3447.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 21CA0088 |
| | : | |
| DANIEL MATHENY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Licking County Court of
                                 Common Pleas, Case No. 21CR00315

JUDGMENT:                        AFFIRMED

DATE OF JUDGMENT ENTRY:          September 28, 2022

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

BILL HAYES                                 OWEN D. KALIS
LICKING CO. PROSECUTOR                     6605 Longshore St.
CLIFFORD J. MURPHY                         Suite 240
20 North Second St., 4th Floor             Dublin, OH 43017
Newark, OH 43055

*Delaney, J.*

{¶1} Appellant Daniel Matheny appeals from judgment entry of conviction and sentence of the Licking County Court of Common Pleas, incorporating the trial court's Judgment Entry of September 22, 2021, overruling his motion to suppress. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following evidence is adduced from the record of appellant's suppression hearing.

{¶3} This case arose on May 29, 2021, when Ptl. Nicholas Potter of the Utica Police Department observed Michelle Byas operating a 2005 Cadillac around 5:49 p.m. Potter believed Byas did not have a valid driver's license and followed the Cadillac as he checked the driver's status. He confirmed Byas was driving under suspension.

{¶4} Potter completed a traffic stop of the vehicle; Byas was driving and appellant was the front-seat passenger. Byas told Potter she had driving privileges from Delaware Municipal Court, but he eventually confirmed that this statement was false. Byas's license was suspended and she had no operating privileges.

{¶5} Potter testified that it is departmental policy of the Utica Police Department to impound a vehicle if the driver does not have a valid license. The written departmental policy was entered into evidence by appellee as State's Exhibit 2. Further, any vehicle subject to impound must be inventoried before it is towed. The purpose of the vehicle inventory search is to document its contents to protect the vehicle owner, police, and tow company from claims later. State's Exhibit 1 is the inventory sheet of the Cadillac.

{¶6} As the traffic stop progressed, Potter radioed for assistance because he could not safely process paperwork and secure both individuals on scene. Chief Batross of the St. Louisville Police Department arrived to assist Potter, and Ptl. Campbell accompanied Batross.

{¶7} During the vehicle inventory, officers found a partially-open red LL Bean "sports bag" in the trunk. Inside the bag was a Crown Royale bag containing electronic scales, suspected methamphetamine, and a Glock handgun. Appellant told police the sports bag and its contents were his.

{¶8} The traffic stop was recorded on Potter's bodycam, and the video was entered into evidence as State's Exhibit 5. Potter testified, and the bodycam video corroborated, that the stop was initiated at 5:49 p.m.; he confirmed Byas's lack of occupational privileges at 5:55 p.m.; he called for assistance at 6:00 p.m.; he filled out the BMV 2255 form for a D.U.S arrest from 6:06 to 6:18 p.m.; and he completed the DUS paperwork between 6:24 and 6:28 p.m. The duration of the stop was approximately 38 minutes from initial contact until the contraband was found in the trunk of the Cadillac. Potter testified this is a "normal" time frame for a DUS traffic stop.

{¶9} Potter described his interaction with appellant in further detail upon cross-examination. Appellant responded to Potter's questions, volunteering that he was on post-release control and wearing an ankle monitor. Appellant and Byas both identified themselves and their identities were confirmed through LEADS. Appellant's operator's license was also suspended, foreclosing the possibility that he could have driven the Cadillac from the scene. Appellant and Byas were placed in the backseat of Batross' cruiser during the vehicle inventory for safety so they weren't standing at the roadside.

Appellant and Byas each had cell phones, which they were allowed to keep while seated in the cruiser.

{¶10} Potter and Batross testified that appellant was not under arrest and was free to leave throughout the encounter, until officers found the contraband in the trunk. The officers did not suggest that appellant leave the scene, but testified that they would have remained at the scene with Byas if appellant left.

{¶11} Appellant's mother arrived at the scene in a vehicle and Batross testified appellant could have left with her until discovery of the contraband, but appellant didn't ask to leave and the officers didn't suggest that he do so.

{¶12} Appellant was charged by superseding indictment as follows: Count I, aggravated possession of methamphetamine pursuant to R.C. 2925.11(A)(C)(1)(b), a felony of the third degree; Count II, aggravated trafficking in methamphetamine pursuant to R.C. 2925.03(A)(2)(C)(1)(c), a felony of the third degree; Count III, having weapons while under disability pursuant to R.C. 2923.13(A)(2), a felony of the third degree, and Count IV, having weapons while under disability pursuant to R.C. 2923.13(A)(3), a felony of the third degree.  The indictment also contains a forfeiture specification pursuant to R.C. 2981.02(A)(1)(C) and R.C. 2941.1417(A) and a firearm specification pursuant to R.C. 2941.141(A).  Appellant entered pleas of not guilty.

{¶13} On August 2, 2021, appellant filed a motion to suppress his statements during the traffic stop, arguing police had no basis to detain him during the traffic stop because he was a passenger in the vehicle. Appellant further moved to suppress the evidence seized, including the methamphetamine and firearm, arguing that the vehicle

inventory of the Cadillac was "pretextual." Appellee responded with a memorandum in opposition.

{¶14} The matter proceeded to evidentiary hearing on September 21, 2021. On September 22, 2021, the trial court overruled appellant's motion to suppress via Judgment Entry.

{¶15} On November 9, 2021, appellant changed his pleas to ones of guilty as charged. The trial court found Counts I and II merge for purposes of sentencing, and appellee elected to sentence upon Count II. The trial court further found that Counts III and IV merged for purposes of sentencing, and appellee elected to sentence upon Count III. Appellant was sentenced to a total aggregate prison term of 6 years.

{¶16} Appellant now appeals from the judgment entry of his convictions and sentence, incorporating the trial court's decision overruling his motion to suppress.

{¶17} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶18} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANT'S MOTION TO SUPPRESS WHEN IT DID NOT APPLY THE CORRECT LEGAL STANDARD TO THE FACTS OF THE CASE."

{¶19} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE DETENTION OF APPELLANT WAS UNLAWFUL."

{¶20} "III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE INVENTORY SEARCH WAS A PRETEXT TO A WARRANTLESS INVESTIGATORY SEARCH."

**ANALYSIS**

I., II., III.

{¶21} Appellant's three assignments of error are related and will be considered together. Appellant argues the trial court erred in overruling his motion to suppress because it failed to apply the correct legal standard to the facts, he was unlawfully detained during the traffic stop, and the vehicle inventory was unreasonable. We disagree.

{¶22} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶23} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v.*

*Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶24} In the case instant case, the trial court overruled appellant's motion to suppress, finding that Potter had reasonable suspicion to make the traffic stop; the vehicle inventory was performed pursuant to departmental policy; and the officers were not obligated to advise appellant he was free to leave the scene.

{¶25} Appellant first argues the trial court should have applied the Fourth Amendment's standard of reasonableness to the vehicle inventory. "Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities." *State v. Mesa*, 87 Ohio St.3d 105, 108, 1999-Ohio-253, 717 N.E.2d 329, *citing South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). "Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not

implicated." *Mesa* at 108, *citing Opperman* at 370, 96 S.Ct. 3092. "Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness." *Mesa* at 108; *State v. Fawcett*, 5th Dist. Knox No. 19CA000027, 2020-Ohio-1004, ¶ 18.

{¶26} In Ohio, a standard inventory search of a lawfully impounded automobile is permissible. *State v. Robinson*, 58 Ohio St.2d 478, 391 N.E.2d 317 (1979), syllabus. In the instant case, appellant does not dispute that Byas was driving under suspension, therefore the vehicle was subject to impound. Appellant could not have driven the vehicle from the scene because he also did not have a valid license. There is no suggestion in the record that Potter initiated the DUS traffic stop as a pretextual means of searching the vehicle.

{¶27} As noted by the Ohio Supreme Court in *Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, 810 N.E.2d 810 at ¶ 11:

> While focusing primarily on inventory searches rather than impoundment, *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, is instructive. The United States Supreme Court concluded that a routine inventory search of a lawfully impounded vehicle is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle. The court held that "[i]n the interests of public safety and as part of what the Court has called 'community

caretaking functions,' * * * automobiles are frequently taken into police custody. * * * The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.* at 368–369, 96 S.Ct. 3092, 49 L.Ed.2d 1000, quoting *Cady v. Dombrowski* (1973), 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706. See, also, *State v. Robinson* (1979), 58 Ohio St.2d 478, 480, 12 O.O.3d 394, 391 N.E.2d 317.

{¶28} The evidence at the suppression hearing demonstrated that neither appellant nor Byas had valid operator's licenses or driving privileges at the time of the stop; no licensed driver was present to drive the vehicle. The written policy of the Utica Police Department required impoundment of the Cadillac. See, *Fawcett*, supra, 2020-Ohio-1004, ¶ 20-21. The written policy was admitted into evidence; if a driver is found to be operating a vehicle while suspended or revoked, the officer shall tow the vehicle. T. 18. Potter testified he had no discretion under the circumstances to decline to tow the vehicle, nor was there any reason not to. *Id.* Further, all impounded vehicles must be inventoried to prevent claims against loss.

{¶29} The trial court implicitly found the vehicle inventory to be reasonable, and we agree. Appellant argues the trial court failed to consider whether the inventory was "conducted in good faith," Brief 10, but points to no evidence demonstrating otherwise. The simple facts of this case indicate the vehicle was subject to impoundment because it was operated by an unlicensed driver, and the vehicle inventory was reasonable.

{¶30} Appellant further argues the vehicle inventory was "pretextual." Having found the inventory reasonable, we disagree with this characterization. Appellant also

asserts that Potter testified that he "converted" the inventory search into an investigatory search after he located the methamphetamine. Brief, 12. Appellant does not cite to the location of this statement in the record, and we are unable to find it upon our review. The evidence at the suppression hearing focused on the justification for the vehicle inventory and the rationale for detaining appellant at the scene. The discovery of the contraband in the trunk of the Cadillac was not discussed in detail, other than to describe evidentiary photos of the contraband. T. 27-28. We find no evidence was presented, and no argument was raised, that the vehicle inventory was a converted into a "warrantless evidentiary search." Brief, 12. Appellant's first and third assignments of error are overruled.

{¶31} In his second assignment of error, appellant argues he was illegally detained as a passenger in the Cadillac when there was no reasonable, articulable suspicion of criminal activity in the vehicle. Potter observed Byas driving and confirmed she had no license or privileges to do so.

{¶32} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop and briefly detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see, also*, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). To justify an investigative stop, the officer must be able to articulate specific facts that would warrant a person of reasonable caution in the belief that the person

stopped has committed or is committing a crime. *See*, *Terry*, 392 U.S. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889. In this case, the trial court found, and we agree, that Potter made a valid stop of the Cadillac.

{¶33} Once an officer lawfully stops an individual, the officer must carefully tailor the scope of the stop "to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Additionally, the length of the stop must "last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500, 103 S.Ct. 1319, 75 L.Ed.2d 229. As documented by his bodycam, this traffic stop took approximately 38 minutes from initial contact to discovery of the contraband during the vehicle inventory.

{¶34} When the sports bag was discovered, the officers recognized suspected methamphetamine, electronic scales, and a firearm. An officer may expand the scope of the stop and may continue to detain the individual without conflicting with *Royer* if the officer discovers further facts, which give rise to a reasonable suspicion that additional criminal activity is afoot. *See, e.g., Terry*, *supra*; *State v. Robinette*, 80 Ohio St.3d 234, 240, 685 N.E.2d 762 (1997). As the court stated in *Robinette*, paragraph one of the syllabus:

> When a police officer's objective justification to continue detention of a person * * * is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.

{¶35} Thus, if a law enforcement officer, during a valid investigative stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." *Id.*, 80 Ohio St.3d at 241, 685 N.E.2d at 768. In the instant case, discovery of the sports bag justified extended detention of the vehicle's occupants.

{¶36} "For the duration of a traffic stop, * * * a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers." *Arizona v. Johnson,* 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), quoting *Brendlin v. California,* 551 U.S. 249, 255, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).

{¶37} We find appellant's detention at the scene was not unlawful. During a legitimate traffic stop, a request for identification from a passenger, followed by a computer check of that information, does not constitute an unreasonable search and seizure, so long as the traffic stop is not extended in duration beyond the time reasonably necessary to effectuate its purpose. *State v. Morgan,* 2d Dist. Montgomery No. 18985, 2002 WL 63196, *2 (Jan. 19, 2002), citing *State v. Chagaris,* 107 Ohio App.3d 551, 556–557, 669 N.E.2d 92 (9th Dist.1995). "A request for identification, in and of itself, is not unconstitutional, and is ordinarily characterized as a consensual encounter, not a custodial search." *Id.,* citing *State v. Osborne,* 2d Dist. Montgomery No 15151, 1995 WL 737913 (Dec. 13, 1995); *Brown* at ¶ 15. However, a passenger, unlike the driver of a vehicle, is not legally obligated to carry identification or to produce it for a police officer. *Morgan* at *2; *Brown* at ¶ 15. An officer "making a traffic stop may order passengers to get out of the car pending completion of the stop" due to the added danger to an officer when a passenger is present and the minimal additional intrusion on the passenger. *State*

*v. Ross,* 2d Dist. Montgomery No. 16135, 1997 WL 531217, *2 (Aug. 29, 1997), citing *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

{¶38} In the instant case, appellant argues his detention was unlawful and that "[o]nce it was determined that [appellant] had no warrants out for his arrest, and there were no other reasons to detain him, he should have been allowed to leave;" moreover, appellant contends he "should have been able to grab his backpack and leave." Brief, 11.

{¶39} In the instant case, the initial purpose of the traffic stop was effectuated in approximately 38 minutes: Potter observed a driver operating with a suspended license, stopped the vehicle, questioned the occupants, researched the driver's claim of driving privileges, and initiated the impoundment of the vehicle and the necessary vehicle inventory. Potter and Batross both testified that throughout this period, appellant was free to leave and did not request to do so. For a portion of this time, appellant was seated in the rear of Batross' cruiser, at which time he was still free to leave, although Batross acknowledged he could not have exited the cruiser on his own. Appellant was not under arrest at that point and even had use of his cell phone; eventually his mother arrived on the scene. The officers did not encourage appellant to leave or volunteer that he was free to do so, but there is no evidence in the record that appellant sought to leave the scene. Appellant's brief states, "[he] **arguably** expressed his desire to leave by calling his mother to come pick him up * * *." Brief,11. There is no evidence, though, that this occurred. The officers were under no obligation to release appellant to his mother on their own initiative, especially when the sports bag was found 38 minutes into the encounter.

{¶40} During the vehicle inventory, the sports bag and contraband were found, a criminal investigation ensued, and the officers were justified in further detaining the vehicle's occupants.  Appellant's second assignment of error is overruled.

{¶41} Potter lawfully stopped the Cadillac for a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. See, *State v. Roseberry*, 5th Dist. Licking No. 2009-CA-78, 2010-Ohio-1112, ¶ 24, citing *Brendlin v. California,* 551 U.S. 248, 263, 127 S.Ct. 2400, 168 L.Ed.2d 132.  In the instant case, there is no evidence to suggest that appellant's detention while the officers investigated the traffic violation was of sufficient length to make it constitutionally dubious. Before the vehicle inventory, Potter prepared the paperwork necessary to cite Byas for driving under suspension. When the bag containing contraband was found in the trunk, the traffic stop was lawfully extended in order to further investigate the possible criminal activity.

{¶42} The trial court did not err in overruling appellant's motion to suppress, and his three assignments of error are overruled.

## CONCLUSION

{¶43} Appellant's three assignments of error are overruled and the judgment of the Licking County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, Earle, P.J. and

Wise, John, J., concur.